UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SAMUEL JONES, | Case No. 2:14-CV-1354 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| NYE COUNTY, et al., | |
| Defendant(s). | |

Presently before the court is defendants' Nye County, et al.'s motion for partial dismissal. (Doc. # 37). Plaintiff Samuel Jones filed a response (doc. # 46), and defendants filed a reply (doc. # 50).

**I.   Background**

This case stems from a May 7, 2011, incident between plaintiff Samuel Jones and Nye County sheriffs. Sheriffs Mark Murphy, Crystal Barajas, and "another county sheriff" ("the sheriffs") responded to a domestic violence call at plaintiff's son's trailer. (Doc. # 1 at 6). The dispute was between plaintiff's son, Earl, and Earl's girlfriend, Darla. (Doc. # 1 at 6).

Plaintiff was at the trailer with Earl and Darla. The trailer is located on a rural 1.5 acre lot in Pahrump. (Doc. # 1 at 6). Plaintiff believes Darla called the Nye County sheriff's office to report domestic violence committed against her. (Doc. # 1 at 6).

According to plaintiff, he attempted to record with a video camera the interactions between Earl and Darla before the sheriffs arrived. (Doc. # 1 at 6). Deputy sheriff Mark Murphy first arrived at Earl's trailer. (Doc. # 1 at 6). Plaintiff was wearing a sidearm.[1] (Doc. # 1 at 7). Plaintiff

---

[1] Plaintiff asserts that he was legally carrying the sidearm. (Doc. # 1 at 7).

**James C. Mahan**
**U.S. District Judge**

1  continued to record the interactions between Earl and sheriff Murphy.  (Doc. # 1 at 6).  Sheriff
2  Murphy instructed plaintiff to stop using the video camera.  (Doc. # 1 at 6).  Plaintiff did not cease
3  filming.  (Doc. # 1 at 6).

4  Deputy sheriff Crystal Barajas arrived on scene and entered the trailer.  (Doc. # 1 at 7).
5  Both sheriffs Murphy and Barajas repeatedly instructed plaintiff to stop filming and to disarm.
6  (Doc. # 1 at 6–7).  Plaintiff refused to cease filming and also refused to disarm.  (Doc. # 1 at 6–7).
7  Plaintiff alleges that, after he refused to obey the sheriffs' instructions, sheriff Barajas "attacked"
8  him with a taser.  (Doc. # 1 at 7).

9  Plaintiff alleges that he lost consciousness while being tased and awoke to defendant
10 Murphy on top of him and wrestling him into handcuffs.  (Doc. # 1 at 7–8).  According to plaintiff,
11 sheriff Murphy then lifted plaintiff off of the floor by his arms and dragged him outside of the
12 trailer.  (Doc. # 1 at 8).  Then, defendant Murphy and "another Deputy Sheriff" picked him up by
13 his hair and forced him into the patrol car.  (Doc. # 1 at 8).  Plaintiff waited in the patrol car until
14 an ambulance arrived to transport him to Desert View Hospital in Pahrump, Nevada.  (Doc. # 1 at
15 8).

16 From the hospital, plaintiff was transported to Nye County Jail where he was booked, and
17 placed into a cell for approximately 30-32 hours.  (Doc. # 1 at 8–9).

18 The government charged plaintiff initially with assault with a deadly weapon upon a police
19 officer (two counts), resisting arrest, obstructing a police officer, intimidating a police officer, and
20 domestic violence.  (Doc. # 1 at 9).  In September 2012, plaintiff proceeded to trial on the felony
21 charge of resisting a public officer with the use of a deadly weapon.  (Doc. # 1 at 9).  Plaintiff
22 asserts that the jury acquitted him of this charge.  (Doc. # 1 at 9).

23 Plaintiff filed his complaint on August 20, 2014, asserting numerous causes of action under
24 42 U.S.C. § 1983 and various state law claims.  Plaintiff has named numerous defendants.
25 Defendant has named Nye County, by and through the Nye County Commissioners Andrew
26 "Butch" Borasky, Dan Schinhofen, Lorinda Wichman, Gary Hollis, Joni Eastly, Frank Carbone,
27 and Donna Cox, all in their individual and official capacities.  (Doc. # 1 at 1).  Plaintiff has also
28 named Nye County sheriff Tony L. Demeo, and deputy sheriffs Mark Murphy and Crystal Barajas

**James C. Mahan**
**U.S. District Judge**

- 2 -

in their individual and official capacities. (Doc. # 1 at 1). On January 8, 2015, the court granted the parties' stipulation to dismiss defendants Frank Carbone and Donna Cox with prejudice. (Doc. # 38).

Defendants now move for partial dismissal of plaintiff's complaint. (Doc. # 37).[2]

## II.     Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported by only conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief."

---

[2] Defendants are somewhat unclear regarding which causes of action they concede remain. In the motion to dismiss defendants state that "Plaintiff's only remaining claim is his Sixth Cause of Action alleging [state violations] of unlawful arrest . . . against Defendants Barajas and Murphy." (Doc. # 37 at 18). However, defendants state in their reply that "[t]he only remaining claim is plaintiff's §1983 false arrest claim including his third cause of action. This claim is against Deputy Murphy and Deputy Barajas." (Doc. # 50 at 12).

**James C. Mahan**
**U.S. District Judge**

- 3 -

*Id*. (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "[f]irst, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

**III.    Discussion**

The court notes at the outset that, although plaintiff filed a response to defendants' motion, plaintiff—who is represented by counsel—fails to cite a *single case* in his response beyond citations for the Rule 12(b)(6) legal standard. Defendants argue that plaintiff fails to meaningfully respond to the motion to dismiss. The court, nonetheless, will address each argument.

*A.    Federal claims brought under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006).

Plaintiff brings his first, second, third, fourth, and fifth claims for relief under § 1983. Plaintiff alleges that his right to keep and bear arms under the Second Amendment; right to freedom of assembly under the First Amendment; right against unlawful seizure and to be free from excessive force under the Fourth Amendment; right to liberty under the Fourteenth

James C. Mahan
U.S. District Judge

- 4 -

Amendment; and right against cruel and unusual punishment under the Eighth Amendment have been violated.

In addition to its enumerated causes of action, plaintiff's complaint also appears to generally allege that Nye County and the Nye County Commissioners failed to (1) provide adequate funding to ensure proper training of its law enforcement; and (2) implement policies to ensure compliance with the United States Constitution and laws of the state of Nevada. (Doc. # 1 at 11). The court construes these as a § 1983 *Monell*[3] claim and a § 1983 failure to train or supervise claim.

*1. Monell and failure to train claims*

Constitutional harm from a municipality's failure to train its officers is cognizable under § 1983 and *Monell*, but the level of culpability is higher than under a state law failure-to-train claim based on a negligence theory:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989). In order for plaintiff's claim to survive the present motion, plaintiff must make plausible that Nye County and the training of deputy sheriffs Murphy and Barajas was so lacking that it amounted to "deliberate indifference." *See Dock v. State of Nevada*, No. 2:10-cv-00275-RCJ-LR, 2010 WL 5441642, at *6 (D. Nev. Dec. 28, 2010).

Plaintiff alleges no specific facts to support his assertion. Instead, plaintiff merely states that Nye County breached its duties by failing to adequately administer the Nye County sheriff's office, failing to provide adequate funding to the Nye County sheriff's office, failing to support and provide resources sufficient for proper training, and failing to engage in "reasonable and necessary oversight." (Doc. # 1 at 11). Plaintiff's conclusory assertions fail under Rule 12(b)(6). Plaintiff's *Monell* and failure to train claims will be dismissed.

---

[3] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).

**James C. Mahan**
**U.S. District Judge**

- 5 -

*2. Individual capacity claims*

For a defendant to be held liable under § 1983, the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights. In other words, there can be no liability under § 1983 based on *respondeat superior* or other theory of vicarious liability. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 663 n.7 (1978); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Liability under § 1983 attaches upon personal participation by a defendant in the constitutional violation. *Taylor v. List*, 880 F.3d 1040, 1045 (9th Cir. 1989). A supervisor may be liable for constitutional violations of subordinates, however, if the supervisor participated in, directed, or knew of the violations and failed to act to prevent them. *Id.*

Here, the complaint does not assert that Nye County, the Nye County Commissioners (also known as individuals Andrew "Butch" Borasky, Dan Schinhofen, Lorinda Wichman, Gary Hollis, and Joni Easterly)[4] or Nye County Sheriff Tony Demeo personally participated in any of the alleged constitutional deprivations. The complaint likewise does not contain any facts suggesting that the Nye County commissioners or Nye County Sheriff Tony Demeo directed or knew of the alleged violations of plaintiff's rights and failed to act to prevent them. Accordingly, any effort to hold the Nye County commissioners or Nye County Sheriff Tony Demeo liable in their individual capacities would necessarily be based upon a theory of *respondeat superior*, and the individual claims against them therefore fail. *Monell*, 436 U.S. at 663 n.7. The individual capacity claims against Nye County, the Nye County commissioners and Nye County Sheriff Tony Demeo will be dismissed.

*3. Official capacity claims*

Claims against an individual in his official capacity are the functional equivalent of a suit against the entity of which he is an agent. *Kentucky v. Graham*, 473 U.S. 159 (1985). Thus, the § 1983 official capacity claims against the Nye County commissioners, Nye County sheriff Demeo, and deputy sheriffs Murphy and Barajas are duplicative of those against Nye County and are

---

[4] The parties stipulated to commissioners Frank Carbone's and Donna Cox's dismissal from the suit, with prejudice. (Doc. # 39).

hereby dismissed as redundant.  *See Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty Sheriff Dept.*, 533 F.3d 780, 799 (9th Cir. 2008) (Sheriff sued in "official capacity" is a redundant defendant and should be dismissed when county is also named).  The official capacity claims against Nye County commissioners and Nye County Sheriff Demeo will be dismissed.

### 4. Remaining federal claims against sheriffs Murphy and Barajas

#### a. First claim for relief: violation of Second Amendment right to bear arms

Defendants argue that plaintiff's statute of limitations expired on May 7, 2013.  Plaintiff, without citing any case law, asserts that the statute of limitations did not begin to run on his § 1983 claims until "*after* the final court hearing" in his criminal case, which was on September 12, 2012. (Doc. # 46 at 6) (emphasis original).  Based on this, plaintiff asserts his statute of limitations did not toll until September 12, 2014.

Although § 1983 is a federal cause of action, it borrows its statute of limitations from the applicable state law.  *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985).  In Nevada, the applicable statute of limitations for personal injury torts is two years.  Nev. Rev. Stat. § 11.190(4)(e).[5]

Although state law governs the length of the limitations period, federal law determines when that period begins to run.  *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981).  Generally, a cause of action accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action."  *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994).  The accrual date of a § 1983 claim, however, "depends upon the substantive basis of the claim."  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

The court believes plaintiff attempts to argue the statute of limitations for each of his § 1983 claims was tolled until after his final court hearing in his criminal case based on *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Heck* established the "favorable termination rule," which set out that:

---

[5] NRS § 11.190(4)(a), which defendants cite, also places a two-year statute of limitation on, "[a]n action against a sheriff . . . upon liability incurred by acting in his or her official capacity and in virtue of his or her office, or by the omission of an official duty . . . ."

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486.

The stated rationale underlying the favorable termination requirement is avoidance of "the possibility of the claimant succeeding in the tort action *after* having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 484. (emphasis added).

However, this argument presents a red herring. Plaintiff concedes that he was never convicted. Plaintiff states that a jury found him not guilty and acquitted him of the charge. (Doc. # 1 at 9). Therefore, plaintiff plainly does not fall within the parameters of *Heck*. *Heck applies to only convictions existing at the time the § 1983 lawsuit is filed. Heck does* not *apply* where there is *no* conviction. *See Wallace v. Kato*, 549 U.S. 384, 392–93 (2007).

The court finds that plaintiff knew or had reason to know of the alleged denial of his Second Amendment rights at the time of the incident on May 7, 2011. (Doc. # 1). Accordingly, the statute of limitations period concluded on May 7, 2013. (Doc. # 1). Plaintiff filed his complaint on August 20, 2014. (Doc. # 1). Therefore, because plaintiff filed his complaint more than a year after the statute of limitations expired, plaintiff's first claim will be dismissed. (Doc. # 37 at 2).

> b. *Second claim for relief: violation of First Amendment right to freedom of assembly*

Defendants argue, again, that plaintiff's statute of limitations expired on May 7, 2013. The court agrees. Plaintiff knew or had reason to know of the alleged denial of his First Amendment rights at the time of the incident on May 7, 2011. (Doc. # 1). Accordingly, the statute of limitations period concluded on May 7, 2013. (Doc. # 1). Plaintiff filed his complaint on August 20, 2014.

James C. Mahan
U.S. District Judge

1  (Doc. # 1). Therefore, because plaintiff filed his complaint more than a year after the statute of
2  limitations expired, plaintiff's second claim must be dismissed. (Doc. # 37 at 2).

3  The court also notes that, because plaintiff fails to state any facts suggesting he was
4  engaged in protected expressive or associational activity, he does not fulfill the pleading standard
5  required by *Twombly* and *Iqbal*. Further, plaintiff's opposition does not respond to defendants'
6  motion to dismiss plaintiff's second cause of action.

7  Under Local Rule 7-2, an opposing party must file points and authorities in response to a
8  motion and failure to file a timely response constitutes the party's consent to the granting of the
9  motion and is proper grounds for dismissal. *See* LR IB 7-2(d); *United States v. Warren*, 601 F.2d
10  471, 474 (9th Cir. 1979).

11  Because plaintiff does not address defendants' points regarding dismissal of his second
12  cause of action, plaintiff concedes that these claims for relief fail. *See* LR IB 7-2(d). "Before
13  dismissing the action, the district court is required to weigh several factors: (1) the public's interest
14  in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of
15  prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and
16  (5) the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995)
17  (internal citation omitted).

18  In light of the defendants' failure to respond and weighing the factors identified in *Ghazali*,
19  the court finds dismissal appropriate. Plaintiff's second claim will be dismissed.

20      c. *Third claim for relief: violation of Fourth Amendment rights against unlawful*
21         *seizure*

22  Construing the facts liberally in plaintiff's favor, it appears plaintiff is making an excessive
23  force claim and a false arrest claim under the Fourth Amendment. First, with respect to the
24  excessive force claim, because the claim occurred on May 7, 2011, it is governed by the same two-
25  year statute of limitations as discussed previously. Therefore, plaintiff's third claim with respect
26  to his claim for excessive force is untimely and will be dismissed.

**James C. Mahan**
**U.S. District Judge**

- 9 -

Second, with respect to plaintiff's false arrest claim under the Fourth Amendment, defendants concede that plaintiff states a claim upon which relief can be granted and that plaintiff's claim is timely. (Doc. # 50 at 3). Accordingly, the court will allow it to proceed.

### d. Fourth claim for relief: violation of Fourteenth Amendment liberty interests

Plaintiff asserts he was arrested and detained without probable cause. The Fourth Amendment, which proscribes unreasonable searches and seizures, is the proper "constitutional peg" on which to hang plaintiff's allegations regarding unlawful arrest and detention. *Albright v. Oliver,* 510 U.S. 266, 270 n.4 (1994); *see also Podesta v. City of San Leandro,* 2005 WL 2333802, at *4 (N.D. Cal. Sept. 21, 2005) (finding that where the gravamen of plaintiff's complaint is that he was subjected to an unreasonable search and seizure and possibly excessive force, § 1983 claims were properly brought under the Fourth Amendment rather than the Fourteenth Amendment). Accordingly, the court will dismiss plaintiff's fourth claim as redundant.

### e. Fifth claim for relief: violation of Eighth Amendment cruel and unusual punishment

"Eighth Amendment scrutiny is appropriate only after the State has secured a formal adjudication of guilt." *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 239 (1983); *Ingraham v. Wright,* 430 U.S. 651, 671–72 n.40 (1977) ("[T]he State does not acquire the power to punish which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Based on the facts alleged in the complaint, defendant was not incarcerated following a formal adjudication of guilt at the time of the alleged incident.

Even construing plaintiff's claims under the Fourteenth Amendment, plaintiff's claims still fail. "Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir.1998); *Ingraham,* 430 U.S. at 671–72 n. 40 ("Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.").

**James C. Mahan**
**U.S. District Judge**

Plaintiff alleges nothing regarding his time as a pretrial detainee beyond receiving medical treatment to remove the taser barbs and being held in jail for 30-32 hours.  Plaintiff states no conduct that would constitute a due process violation.  Plaintiff's fifth claim will be dismissed.

B. *State law claims*

1. *Sixth claim for relief: violation of state law unlawful arrest*

Plaintiff alleges a claim of "unlawful arrest."  (Doc. # 1 at 15).  It is unclear whether plaintiff intended to bring a federal or state "unlawful arrest" claim.  Neither plaintiff nor defendant cite any authority establishing a private right of action for unlawful arrest.  The court believes, based on the structure of plaintiff's complaint, that plaintiff intended to bring a state law claim for "unlawful arrest."[6]  The court cannot find a Nevada law creating a cause of action for unlawful arrest.  Further, any references to "unlawful arrest" in state common law are made in the context of a lack of probable cause, which makes this claim redundant to plaintiff's Fourth Amendment claim for false arrest.  *See, e.g.*, *Decanio v. Cannon*, No. 59744, 2014 WL 1006657, at *1 (Nev. Mar. 13, 2014).  Accordingly, plaintiff's sixth claim will be dismissed.

2. *Seventh claim for relief: violation of state law false imprisonment*

Plaintiff alleges the state law claim of false imprisonment.  Plaintiff alleges he was "transported to Nye County Jail, booked and placed into a cell where he remained for approximately 30-32 hours."  (Doc. # 1 at 8).  Plaintiff's arrest occurred sometime on May 7, 2011.  Accordingly, plaintiff's release occurred on either May 8, 2011, or May 9, 2011, at which point the applicable two-year limitations period began to run.  *See* Nev. Rev. Stat. § 11.190(4).  Plaintiff filed his complaint on August 20, 2014.  (Doc. # 1).  Even assuming plaintiff was released on May 9, 2011, plaintiff's claim is time-barred and will be dismissed.

3. *Eighth claim for relief: violation of state law battery*

Plaintiff alleges the state law claim of battery.  Plaintiff alleges that sheriff Barajas "attacked" him with a taser, causing him to lose consciousness. (Doc. # 1 at 7).  Plaintiff further claims, after being tased, sheriff Murphy then lifted plaintiff off of the floor by his arms and drug

---

[6] If plaintiff is referring to a federal right, then this claim is redundant to his third claim for relief for false arrest under the Fourth Amendment, and would be dismissed.

**James C. Mahan**
**U.S. District Judge**

- 11 -

him by his hair to the patrol car. (Doc. # 1 at 8). This alleged tort occurred on or around May 7, 2011, at which point the applicable two-year limitations period began to run. *See* Nev. Rev. Stat. § 11.190(4). Plaintiff filed his complaint on August 20, 2014. (Doc. # 1). Plaintiff's claim is time-barred and will be dismissed.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' Nye County, et al.'s motion for partial dismissal (doc. # 37) be, and the same hereby is, GRANTED. Plaintiff's lone remaining claim is against deputy sheriffs Murphy and Barajas for Fourth Amendment false arrest brought under 42 U.S.C. § 1983.

DATED April 20, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**